IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | |
|---|---|
| TAMMY WISE,<br><br>Plaintiff,<br><br>vs.<br><br>TAMA COUNTY, IOWA, CURT HILMER (Individually and in his official capacity), MARK DOLAND (Individually and in his office capacity), DAVID TURNER (Individually and in his official capacity), CURT KUPKA (Individually and in his official capacity), and HEATHER KNEBEL (Individually and in her official capacity),<br><br>Defendants. | Case No. 1:26-cv-00187-KEM<br><br>**ANSWER TO PETITION AND JURY DEMAND (REMOVED FROM IOWA DISTRICT COURT)** |

For their answer to Plaintiff's Amended Petition, Defendants Tama County, Iowa, Curt Hilmer, Mark Doland, David Turner, Curt Kupka and Heather Knebel (collectively "the Defendants") state as follows:

## I. INTRODUCTION

1. Tammy Wise brings this action to redress wrongs committed against her relating to her termination from employment with Tama County.

Answer: Admitted that Tammy Wise has filed this action. The remainder of the paragraph is denied.

## II. PARTIES

2. Wise was at all material times hereto a resident of Tama County, Iowa and an employee of Tama County.

Answer: Admitted.

3. Tama County, Iowa ("the County") is an Iowa municipality as defined in Iowa Code § 670.1(2).

Answer: Admitted.

4. Curt Hilmer is a member of the Tama County Board of Supervisors living in Tama County, Iowa.

Answer: Admitted.

5. Mark Doland is a member of the Tama County Board of Supervisors living in Tama County, Iowa.

Answer: Admitted.

6. David Turner is a member of the Tama County Board of Supervisors living in Tama County, Iowa.

Answer: Admitted.

7. Curt Kupka is a member of the Tama County Board of Supervisors living in Tama County, Iowa.

Answer: Admitted.

8. Heather Knebel is a member of the Tama County Board of Supervisors living in Tama County, Iowa.

Answer: Admitted.

## III. JURISDICTION AND VENUE

9. This Court has jurisdiction over this matter as the acts giving rise to the matter occurred in Tama County, and the value exceeds the small claims jurisdictional amount.

Answer: Admitted this Court has jurisdiction because the alleged acts occurred in Tama County and pursuant to 28 U.S.C. § 1331, but denied that the Defendants Tama County, Iowa, Curt Hilmer, Mark Doland, David Turner, Curt Kupka and Heather Knebel owe Ms. Wise any damages.

10. Venue is appropriate in Tama County but should be changed pursuant Iowa R. Civ. P. 1.801(1) because the county is a party, the issue is triable by a jury, and a jury has been demanded.

Answer: This action has been removed to this Court under 28 U.S.C. § 1331, and the Northern District of Iowa is the appropriate venue.

## IV. FACTS

11. Wise was hired by the county on or about February 6, 2000.

Answer: Admitted that Wise was hired by the County February 8, 2000.

12. In July 2017 Wise was promoted to the role of Human Resources Manager and Insurance Administrator.

Answer: Admitted.

13. In May 2022 citizens attended a normally scheduled board meeting to complain about wind turbines.

Answer: Denied for lack of personal knowledge or information.

14. Over the ensuing months and years, the citizens who began attending meetings and complaining formed an ad hoc group to influence county policy regarding wind turbines. At the time, Wise did not know anything about wind turbines nor was she aware that there was a project approved for 60 turbines in Tama County.

Answer: Denied for lack of personal knowledge or information.

15. The ad hoc group called Tama County Against Turbines ("TCAT").

Answer: Denied for lack of personal knowledge or information.

16. TCAT advocated against allowing wind turbines in the county and filed lawsuits against the county to accomplish that goal.

Answer: Admitted certain persons advocated against wind turbines in the County and admitted those persons filed lawsuits against the County. Denied for lack of personal knowledge or information about who was involved in any "ad hoc" group called TCAT or their motives/goals.

17. TCAT initiated litigation to stop the wind turbine development. In her job as HR Manager and insurance administrator, Wise worked with and between the Board of Supervisors and the county's insurance carrier to defend the county.

Answer: Admitted certain persons advocated against wind turbines in the County and admitted those persons filed lawsuits against the County. Denied for lack of personal knowledge or information about who was involved in any "ad hoc" group called TCAT or their motives/goals. Admitted with respect to Wise's title and that she played a role with the Board of Supervisors and the county's insurance carrier with respect to the defense of the county.

18. TCAT's methods became not just litigious, but also disruptive at normal meetings of the board. The meetings, once sedate, became very confrontational, disrespectful, accusatory, bullying, and intimidating, especially toward Wise.

Answer: Denied.

19. Regardless of the meeting agendas, Wise became an undeserved target of the unhappy citizens' ire, including ongoing demands for her resignation or termination.

Answer: Denied that Wise was "an undeserved target of the unhappy citizens' ire." Admitted there were calls for her resignation or termination. The remainder of the paragraph is denied due to the characterization that the demands were "ongoing" for lack of clarity regarding the timeframe referenced.

20. All five members of the current board of supervisors were members of TCAT or sympathetic to its purpose, if not its methods.

Answer: Denied.

21. On being sworn in, at the first meeting of the year or shortly thereafter, the new board of supervisors immediately began discussing taking away parts of Wise's job.

Answer: Denied as to the characterization. Admitted that upon being sworn in, the board members began considering Ms. Wise's role and job functions, as well as other employees' roles and job functions. The remainder of the paragraph is denied.

22. In mid-January, 2025, the county hired Paul Greufe to do a human resources "audit" directed at Wise.

Answer: Admitted the County contracted with Paul Greufe to conduct a human resources audit, among other tasks. The remainder of the paragraph is denied, including that the County "hired" Mr. Greufe and that his "audit" was directed at Wise.

23. On January 30, 2025, Wise had a meeting with supervisors Doland and Hilmer to discuss general fund account balance problems.

Answer: Admitted.

24. Around the same date, Greufe visited Wise at her office unannounced and asked Wise about a variety of concerns, including the handling of FMLA, the

hiring of a candidate to the board of adjustment, the termination of a naturalist on the conservation board, and giving advice on complaining to the IPIB on open meetings and records issues.

Answer: Admitted Greufe visited Wise and that there is a recording of the visit. The recording speaks for itself. The remainder of the paragraph is denied for mischaracterization of Greufe's conversation with Wise. Defendants deny any characterization or allegation inconsistent with the recording.

25. Greufe also accused Wise of getting a discount on a generator for her home based on her county position and not "paying taxes" on the purchase.

Answer: Admitted Greufe visited Wise and that there is a recording of the visit. The recording speaks for itself. The remainder of the paragraph is denied for mischaracterization of Greufe's conversation with Wise. Defendants deny any characterization or allegation inconsistent with the recording.

26. Wise denied Greufe's accusation and told him that the board was on a witch hunt.

Answer: Admitted Greufe visited Wise and that there is a recording of the visit. The recording speaks for itself. Defendants deny any characterization or allegation inconsistent with the recording.

27. Within the next few days, the board scheduled a closed session for the following Monday to discuss Wise's termination.

Answer: Admitted the board scheduled a closed session to evaluate Ms. Wise's performance. The remainder of the paragraph is denied.

28. On February 3, 2025, the board went into closed session to discuss Wise's

performance.

Answer: Admitted.

29. Wise was not consulted and did not request the closed session.

Answer: Denied.

30. Despite not authorizing or requesting the closed session, the Board did go into closed session on that date, in violation of Iowa Code chapter 21.

Answer: Admitted the Board closed its session; the remainder of the paragraph is denied.

31. In the closed session Greufe brought up the false allegation that Wise received an unwarranted discount on her generator and that she did not pay taxes on the purchase. Wise asked Greufe if he had the letter she sent him that she received from Hawkeye stating that there was no correlation between Wise's generator purchase and the County's generator purchase.

Answer: The recording of the closed session (previously ordered to be produced by the Iowa District Court for Tama County[1]) speaks for itself. Defendants deny the characterization that the allegations discussed were false. The remainder of the paragraph is admitted, but Defendants deny any characterization or allegation inconsistent with the recording.

32. Greufe said he did not receive the letter. Later in the closed session, Wise opened the document that she received from Hawkeye Electric on her phone and proved there was no discount from Hawkeye Electric because of her job with

[1] Throughout this Answer, referring to case No. LACV008973, dismissed without prejudice on August 5, 2026.

Tama County. She received a discount for paying in cash

Answer: The recording of the closed session (previously ordered to be produced by the Iowa District Court for Tama County) speaks for itself. Admitted Wise purportedly referred to or displayed the Hawkeye Electric letter on her phone. The remainder of the paragraph is denied, and Defendants deny any characterization or allegation inconsistent with the recording.

33. Then, Greufe raised some questions about whether Wise had paid sales tax on the purchase. Wise stated that she had no way of knowing for sure whether she had paid sales tax on the purchase, and that it was Hawkeye's responsibility to include sales tax.

Answer: The recording of the closed session (previously ordered to be produced by the Iowa District Court for Tama County) speaks for itself. Admitted Greufe and Wise discussed whether sales tax had been paid, that Wise stated she did not know whether she had paid sales tax, and that Wise asserted any failure to charge or collect sales tax was Hawkeye Electric's responsibility. Defendants deny any characterization or allegation inconsistent with the recording.

34. Wise asked the group to call Hawkeye at least two times to confirm whether she had paid sales tax or not. They would not call to verify.

Answer: The recording of the closed session (previously ordered to be produced by the Iowa District Court for Tama County) speaks for itself. Admitted Wise asked to call Hawkeye but further state that Greufe represented he had already contacted Hawkeye Electric. The remainder of the paragraph is denied, and Defendants deny any characterization or allegation inconsistent with the recording.

35. Karen Rohrs, the County Auditor, told the board and Greufe that the County Auditor, Beth, had looked into the generators and had contacted Hawkeye Electric the year they were purchased and found no problems.

Answer: The recording of the closed session (previously ordered to be produced by the Iowa District Court for Tama County) speaks for itself. Admitted Ms. Rohrs stated that "Auditor Beth" had previously looked into the generator. Denied that she stated the Auditor contacted Hawkeye Electric the year the generators were purchased and Defendants deny any characterization or allegation inconsistent with the recording.

36. In that same closed session, Greufe told Wise that "allowing this language in a handbook is unbelievable to [him]," and that he would guarantee "this has never been in any handbook, this kind of language ever, because it violates the law." He said Wise had marriage and veteran status in the listed protected civil rights and that is incorrect. Wise explained that she had expert employment and small government lawyer Brent Hinders review and update the handbook in June of 2024, and that she relied on Hinders because he is the expert lawyer.

Answer: The recording of the closed session (previously ordered to be produced by the Iowa District Court for Tama County) speaks for itself. Admitted that Greufe stated that the handbook language violates the law. Admitted that Wise explained she had a lawyer review and update the handbook, denied that she called the lawyer an "expert employment and small government lawyer." Defendants deny any characterization or allegation inconsistent with the recording.

37. Greufe then said Wise shouldn't have to have an attorney, she "should

know" all of that. Wise asked them to call Brent Hinders and they said they would not. Supervisor Turner asked Greufe how quickly could he "fix the handbook" and Greufe told them by Friday.

Answer: The recording of the closed session (previously ordered to be produced by the Iowa District Court for Tama County) speaks for itself. Admitted Wise said, "you need to call Brent Hinders" about the handbook and that Supervisor Turner asked Greufe about how quickly he could "fix the handbook." Defendants deny any characterization or allegation inconsistent with the recording.

38. Greufe then told the board that Wise had mentioned getting an attorney and he was not concerned [about litigation] if the board decided to terminate Wise, that "they would be ok" if she did choose to litigate.

Answer: The recording of the closed session (previously ordered to be produced by the Iowa District Court for Tama County) speaks for itself. Denied that the paragraph cites a direct quote from Greufe. Defendants deny any characterization or allegation inconsistent with the recording.

39. Wise told the board she had done nothing warranting termination.

Answer: The recording of the closed session (previously ordered to be produced by the Iowa District Court for Tama County) speaks for itself. Admitted.

40. After the closed session, the board voted to terminate Wise, citing the decision followed "an audit" of policies and practices and a "complaint from a member of the community that she may have benefitted financially as a result of the purchase of an item without paying required sales tax. This item was included, at least indirectly, with the purchase of other similar tax-exempt property." The statement is false

Answer: Admitted the majority of the Board voted to terminate Wise citing numerous reasons including those above. Denied the statement is false.

41. Later that day Wise called Hawkeye Electric and was told that she did pay sales tax; that it was included in the total amount.

Answer: Denied for lack of personal knowledge or information.

42. On or about February 10, 2025, the Board of Supervisors had Greufe draft a termination letter to Tammy Wise that states in relevant part:

> **Acceptance of gifts Iowa Code 688, Government Ethics and Lobbying**
>
> Ms. Wise did not pay sales tax on the item in question resulting in a financial savings exceeding $500.00
>
> **Failure to comply with state and federal law; failure to have adequate knowledge of and to comply with the County'» (sic) policies and procedures; and failure to perform duties as outlined in the employee's job description or to carry out reasonable assignments or Instructions**
>
> - Ms. Wise was not administering the FMLA program in compliance with Federal Law.
> - Ms. Wise was not administering the drug testing policy in compliance with Iowa Law.
> - Ms. Wise was not administering the harassment policy in compliance with Federal and Iowa law.
> - Ms. Wise negotiated a union agreement that violates the Fair Labor Standards Act.
> - Ms. Wise was not administering the Veterans Preference Act in

accordance with Iowa Law.

- Ms. Wise was not administering a recruitment policy in accordance with Iowa Law.

Answer: Admitted the board directed Mr. Greufe to draft a letter and issued a letter on or around February 10, 2025, regarding Ms. Wise's termination pursuant to Iowa Code § 331.321.

43. The allegations included in the termination letter are false.

Answer: Denied.

44. On or about February 18, 2025, the board issued a press release that repeated the same falsehoods.

Answer: Admitted the board issued a statement describing its termination decision as authorized under Iowa Code Chapter 22. The remainder of the paragraph is denied, including for lack of completeness when citing to a document which speaks for itself.

45. This was released to the public at large and constitutes defamation per se.

Answer: Admitted the statement was available to the public. The rest of the paragraph is a legal conclusion that does not require a response. To the extent it requires a response, the Defendants deny the remainder of the paragraph.

46. After she was fired on February 3, 2025, Tammy Wise ceased being a public official.

Answer: Denied both on the factual claim and to the extent the allegation is a legal conclusion.

47. After Wise's termination, Mark Doland and Heather Knebel, both in their

individual and official capacities, contacted Sonya Heithusen, Public Information Officer with the Iowa State Auditor, with the following statements:

a. that Wise received an "unwarranted discount" on a personal generator purchase due to it being included on a document with other generators purchased for the county;

b. that Wise did not pay sales tax on the generator;

c. that Wise engaged in nepotism and did not properly post a vacant position that was later filled by her daughter;

d. that, in her capacity as Central Point of Coordination for Tama County, Wise stole personal property from clients, including jewelry, a wallet, money, and coins.

e. that Wise concealed expenditures and decisions surrounding the hiring and firing of employees; and

f. that Wise improperly used county funds to settle claims with former employees – including her former husband, Craig Wise; (sic)

Answer: Admitted board members, in their official capacity as elected officials of Tama County with an interest to uphold, reported concerns to be investigated by the State Auditor. The characterization of those reported concerns are denied.

48. These false statements and allegations were thereafter published in the audit conducted by Rob Sand and the State of Iowa

Answer: Admitted board members, in their official capacity as elected officials of Tama County with an interest to uphold, reported concerns to be investigated by the State Auditor. Admitted that the State Auditor's office investigated and published

an audit. The remainder of the paragraph is denied.

## VI. CAUSES OF ACTION

### COUNT I – LIBEL PER SE
(All Defendants)

49. Plaintiff incorporates paragraphs 1 through 48 of this Petition as if fully set forth herein.

Answer: Defendants incorporate and replead their answers to paragraphs 1-48 of the Petition as if fully stated.

50. Defendants wrote purported documented reasons and rationale and a termination letter (hereafter referred to as termination documents) they planned to make public and in fact made public under the guise of Chapter 22 of the Iowa Code.

Answer: Admitted Defendants drafted and issued a termination letter which was made public. The remainder of the paragraph is denied.

51. Defendants provided the termination documents to local media for publication, which they knew would be disseminated in news outlets throughout the state.

Answer: Admitted Defendants provided a response to a news media inquiry.

52. Defendants did not provide any advance notice to Wise regarding the publication of the letter, and likewise did not provide Wise any opportunity to challenge the publication or to attach Wise's response to the false and defamatory information contained therein.

Answer: Admitted Defendants Tama County, Iowa, Curt Hilmer, Mark Doland, David Turner, Curt Kupka and Heather Knebel, did not provide any advance notice to Ms. Wise regarding the letter, beyond sending the letter to her. The remainder of the

paragraph is denied.

53. The statements in the letter, including but not limited to, stating that Wise abused her office and benefitted financially in purchasing an item without paying sales tax and was not administering county policies and programs in compliance with state and federal law were false, intended to injure Wise's reputation, intended to expose Wise to public contempt and ridicule, and to further damage her ability to obtain further employment.

Answer: Denied.

54. Defendants prepared the false and defamatory termination documents and subsequently disseminated it for mass publication with malice and in wanton, intentional disregard for the truth and Wise's rights, thereby precluding Defendants from relying on any purported immunities under Iowa law.

Answer: Denied.

55. The contents of the letter constitute libel per se or, in the alternative libel per quod.

Answer: Denied.

56. The termination letter proximately caused and continues to cause Wise damages, including damages to her reputation, emotional distress, lost wages, loss of earning capacity, and general damages that are presumed to result from the communication of libelous statements, and attorney fees.

Answer: Denied.

57. Defendants Doland and Knebel in their individual and official capacities, made statements to Sonya Heithsusen, the Public Information Officer with the State

Auditor's office accusing Wise of, among other things, abusing authority in her public office by obtaining benefits for herself and her family only because of her official position, failing to pay taxes, concealing expenditures, improperly using funds, and theft.

Answer: Admitted board members, in their official capacity as elected officials of Tama County with an interest to uphold, reported concerns to be investigated by the State Auditor. The characterization of those reported concerns are denied. Denied that Defendants Doland and Knebel acted in their individual capacities.

58. These statements, both verbal and written, were false and made either recklessly or with malice and were intended to injure Wise's reputation, intended to expose Wise to public contempt and ridicule, and to further damage her reputation.

Answer: Denied.

59. The statements constitute defamation per se, or, in the alternative, defamation per quod.

Answer: Denied.

60. The law of defamation was clearly established at the time of Defendants' violation.

Answer: Admitted the law was clearly established at all relevant times, but denied that Defendants' statements or actions constitute defamation or defamation per quod.

61. Plaintiff requests relief as set forth more fully below.

Answer: Admitted Ms. Wise requests relief. Denied that Ms. Wise is entitled to any relief.

COUNT II – 42 U.S.C. § 1983: FOURTEENTH AMENDMENT PROCEDURAL DUE PROCESS
(All Defendants in their individual capacities)

62. Plaintiff incorporates paragraphs 1 through 61 of this Petition as if fully set forth herein.

Answer: Defendants incorporate and replead their answers to paragraphs 1-61 of this Petition as if fully stated.

63. Defendants publicly disseminated false and stigmatizing accusations about Wise, namely that she had failed to pay required taxes, violated state and federal law, stolen coins and jewelry through her position, and abused her public office for personal gain.

Answer: Denied.

64. These accusations seriously damaged Wise's good name, reputation, honor, and standing in the community.

Answer: Denied.

65. In terminating Wise and publishing these false accusations, Defendants acted "under color of state law," acting under power granted to them as members of the Board of Supervisors of Tama County.

Answer: Denied that Defendants published false accusations. Admitted Defendants acted in their official capacity as members of the Board of Supervisors and are "under color of state law."

66. Defendants and their agent, Paul Greufe, at times material to this case acted under color of state law.

Answer: Denied that contractor Paul Greufe acted under color of state law. Admitted

Defendants acted in their official capacity as members of the Board of Supervisors and are "under color of state law."

67. Defendants did not provide Wise adequate notice of the claims against her or provide Wise with a meaningful opportunity to refute the claims before they were disseminated to the public.

Answer: Denied.

68. Defendants did not provide Wise a meaningful opportunity to clear her name in the public record after the publication of these false accusations.

Answer: Denied.

69. By publicly spreading these false allegations without providing Wise a meaningful opportunity to defend herself or publicly clear her name, Defendants deprived Wise of a liberty interest protected by the Fourteenth Amendment.

Answer: Denied.

70. The actions taken by Defendants constitute an official decision or act of Tama County, making the County liable for the constitutional deprivation of Wise's rights under 42 U.S.C. § 1983.

Answer: Admitted the Defendants' decisions were official acts and performed in their official capacities and that the County could be liable for any deprivation of constitutional rights. However, denied that the Defendants deprived Wise of her constitutional rights.

71. The Defendants each personally participated in, authorized, directed, approved, or knowingly caused the constitutional deprivation.

Answer: Denied.

72. A reasonable public official would have understood that publicly disseminating false and seriously damaged accusations surrounding someone's termination without providing a meaningful opportunity to clear the affected employee's name violated the employee's procedural due process rights.

Answer: Denied that Defendants publicly disseminated false and seriously damaging accusations without a meaningful opportunity for Wise to clear her name and in violation of her procedural due process rights. To the extent this paragraph purports to state a legal conclusion about what a "reasonable public official" would have understood, Defendants deny the allegation and further deny the law or facts support Wise's characterization.

73. As a direct and proximate result of Defendants' actions, Wise has suffered and will continue to suffer reputational injury, lost wages and benefits, diminished earning capacity, lost employment opportunities, humiliation, emotional distress, and other damages.

Answer: Denied.

74. Wise is entitled to appropriate equitable relief, including a constitutionally adequate name-clearing hearing and correction of the public record.

Answer: Denied.

VII (sic). RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment and seeks lost wages past and future, emotional distress past and future, attorney fees and costs, an award of pre-judgment interest as provided by law, and such other and additional relief as the Court may deem just and proper.

Answer: WHEREFORE, Defendants respectfully request that Plaintiff's lawsuit be dismissed, court costs be assessed against her and such other and additional relief as the Court may deem just and proper.

VII (sic). JURY DEMAND

This is not a pleading to which Defendants are required to answer.

## AFFIRMATIVE DEFENSES

For the Defendants' affirmative defenses they state:

1. Plaintiff has failed to state a claim on which relief may be granted.

2. After acquired evidence of employee misconduct discovered post-termination will limit damages and other relief.

3. To the extent Plaintiff suffered damages, which the Defendants expressly deny, Plaintiff has failed to mitigate her damages.

4. The Defendants' statements were true or substantially true.

5. The Defendants' statements were absolutely privileged.

6. The Defendants' statements were subject to qualified privilege.

7. The Defendants' statements were not made with actual malice.

8. Plaintiff was, at all relevant times including after termination, a public figure or a limited public figure.

9. Plaintiff was, at all relevant times, an at will employee and had no property interest in her employment.

10. The Defendants provided Plaintiff with sufficient due process, and she failed to avail herself of the due process offered.

11. The Defendants are entitled to qualified immunity.

12. The Defendants' conduct with respect to Plaintiff's employment was justified and privileged and was in good faith, without malice, spite, or conscious, reckless or negligent disregard of Plaintiff's rights, if any, and was without improper purpose or ill will of any kind.

13. All actions by Defendants were based on legitimate business considerations and were made in good faith and in compliance with the provisions of state and federal laws, rules, and regulations.

14. Plaintiff's recovery, if any, is limited under statutory caps.

15. To the extent Plaintiff seeks punitive damages against Tama County, those are precluded as a matter of law. Iowa Code § 670.4(1)(e).

16. To the extent punitive damages are sought by Plaintiff and are excessive, such a claim violates the Iowa and U.S. Constitutions.

17. The Defendants held an honest belief that Plaintiff's performance was deficient which resulted in the decision to terminate her employment (see e.g., *Feeback v. Swift Pork Co*., 938 N.W.2d 340 (Iowa 2023)).

18. The Defendants deny all allegations contained in the Petition which are not specifically admitted.

19. Defendants reserve the right to amend their Answer and to rely upon any affirmative defenses that may hereafter be disclosed by further investigation and discovery.

/s/ Amy L. Reasner
AMY L. REASNER, AT0006390
SAMANTHA R. KUNTZ, AT0014985
of
LYNCH DALLAS LEGAL
316 Second Street SE, Suite 124
P.O. Box 2457
Cedar Rapids, Iowa 52406-2457
Telephone 319.365.9101
Facsimile 319.365.9512
E-Mail: areasner@lynchdallas.com
skuntz@lynchdallas.com

ATTORNEY FOR DEFENDANTS
TAMA COUNTY, IOWA, CURT HILMER, MARK DOLAND, DAVID TURNER, CURT KUPKA and HEATHER KNEBEL